IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHENG INTERNATIONAL CO. LTD., | |
| Plaintiff, | **8:20-CV-124** |
| vs. | |
| PRINCE AMERICAS, LLC,  WAITT BRANDS, LLC,  C3 BRANDS, LLC; DANA BRADFORD,  EKTELON RACQUETS, LLC; and  PRINCE GLOBAL SPORTS LLC, LLC; | **MEMORANDUM AND ORDER** |
| Defendants. | |

## I.      INTRODUCTION

This matter is before the Court on Defendants' Motion for Partial Summary Judgment as to Counts I and IV of Plaintiff's Amended Complaint, Filing 59; Defendants' Motion for Partial Summary Judgment as to certain purchase orders made by Prince EMEA, Filing 61, who is not a party to this case; Plaintiff's Motion to Amend its Amended Complaint and Amend Case Progression Order, Filing 70; and Plaintiff's Motion to Stay Defendants' Motion for Partial Summary Judgment as to the Prince EMEA purchase orders. Filing 79. For the reasons stated herein, the Court grants Defendants' Motion for Partial Summary Judgment as to Counts I and IV, denies as moot Defendants' Motion for Partial Summary Judgment as to the Prince EMEA purchase orders, intends to grant Plaintiff's Motion to Amend its Amended Complaint and Amend Case Progression Order, and denies as moot Plaintiff's Motion to Stay. The Court also grants

1

Sheng seven days to supplement its Motion to Amend its Amended Complaint and Amend Case Progression order to request leave to amend its complaint to state payment was due within ninety days for purchase order 101056.

## II.     BACKGROUND

Sheng International Co. Ltd. ("Sheng"), a Taiwanese corporation, brought this suit against Defendants for their alleged failure to pay several purchase orders. Filing 10 at 2, 5. Defendants, Prince Global Sports, LLC, ("Prince Global") Prince Americas, LLC, ("Prince Americas") and Ektelon Racquets, LLC, ("Ektelon Racquets") (collectively, "the licensees") are vendors of sporting equipment. Filing 10 at 1-5. Defendant Dana Bradford is the controlling member and manager of Prince Global Sports, LLC, a licensee and corporate parent of Prince Americas and Ektelon Racquets. Filing 10 at 3. All the brand licensees were subsidiaries of defendant Waitt Brands, LLC ("Waitt"), which is now doing business as C3 Brands, LLC ("C3"). Filing 10 at 3-4. Bradford was also the managing member and officer of Waitt and is the chairman and chief executive officer of C3. Filing 10 at 4. The licensees had a license with Authentic Brands Group, LLC, ("ABG") a nonparty, to sell Prince- and Ektelon-branded merchandise. Filing 10 at 1.

In late 2015, the licensees and Prince EMEA, who is not a party to this lawsuit, issued seventeen purchase orders to Sheng for Prince- and Ektelon-branded merchandise. Filing 10 at 1; Filing 63-1 at 18-34. Sheng alleges in its Amended Complaint that the purchase orders required the licensees to pay Sheng within thirty days after shipment. Filing 10 at 5; Filing 63-1 at 18-33. However, one purchase order filed in this case, purchase order 101056, appears to require payment ninety days after shipment. Filing 63-1 at 34. Sheng shipped the merchandise pursuant to the seventeen purchase orders prior to February 26, 2016. Filing 63-2 at 4-7. The total bill for these

purchase orders is $351,871.41.[1] Filing 10 at 5; Filing 63-1 at 1-17. According to Sheng, it has not received any payments from Defendants. Filing 10 at 5.

Sheng alleges that in March 2016, the licensees and Waitt agreed with ABG to terminate the licenses for the Prince and Ektelon brands. Filing 10 at 7. They memorialized the terms of this agreement in an Inventory Purchase Agreement ("IPA") and Transition Services Agreement ("TSA"). These agreements required the licensees to use their accounts receivable to pay outstanding debts to third parties, such as Sheng. Filing 10 at 7. Bradford signed the agreements on behalf of the licensees and Waitt. Filing 10 at 7. Sheng claims to be a third-party beneficiary of the IPA and TSA. Filing 10 at 7.

Sheng sued Defendants on March 30, 2020. Filing 1. In its Amended Complaint, Sheng brings a claim for breach of contract based on the purchase orders against the licensees in Count I; a breach-of-contract claim based on the IPA and TSA against the licensees, C3, and Waitt in Count II; and an unjust enrichment claim against the licensees in Count III. Filing 10 at 9-11. Sheng also seeks to hold the licensees, Bradford, C3, and Waitt jointly and severally liable by piercing the corporate veil in Count IV. Filing 10 at 11. On June 2, 2021, Defendants filed their Motion for Partial Summary Judgment as to Counts I and IV and their Motion for Partial Summary Judgment as to the Prince EMEA Purchase Orders. Filing 59; Filing 61. Sheng filed a Motion to Amend the Amended Complaint and Amend Case Progression Order in order to add two previously unknown defendants on June 15, 2021. Filing 70. Sheng also filed a Motion to Stay

---

[1] Sheng's Amended Complaint states that the delivered merchandise was worth $351,871.41. Filing 10 at 5. This total reflects the amount billed in the invoices filed with the Court. Filing 63-1 at 1-17. However, in its Brief in Opposition to Partial Summary Judgment as to Count I and IV, Sheng states that the amount it is owed is $350,693.10. Filing 78 at 9. Because the invoices show that the total bill is $351,871.41, and Sheng claims it has not received any payment that would reduce this amount, the Court uses that figure.

regarding Defendants' Motion for Partial Summary Judgment as to the Prince EMEA Purchase Orders on June 30, 2021. Filing 79.

### III.    ANALYSIS

### A.  Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Motion for Partial Summary Judgment as to Counts I and IV

In their Motion for Partial Summary Judgment as to Counts I and IV, Defendants seek judgment in their favor on Sheng's breach-of-contract claim in Count I and Sheng's request to pierce the corporate veil in Count IV. Filing 59 at 1. Defendants argue that, pursuant to Neb. Rev. Stat. U.C.C. § 2-725(1), Sheng's claim for breach of contract against the licensees is barred by the four-year statute of limitations for bringing breach-of-contract-for-sale claims. Filing 60 at 3, 10-13. Moreover, Defendants contend that, to the extent Sheng seeks to hold them jointly and severally liable for breach of contract under a piercing-the-corporate-veil theory, the four-year statute of limitations bars claims against all the defendants. Filing 60 at 13-15. In response, Sheng argues that it filed suit within the four-year statute of limitations period. Filing 78 at 10-16. The Court concludes that Sheng failed to file its breach-of-contract claim within the applicable statute of limitations period and thus grants Defendants' Motion for Partial Summary Judgment as to Counts I and IV.

    1.   *The Statute of Limitations Bars Enforcement of Sixteen of the Purchase Orders*

When sitting in diversity, this Court applies substantive Nebraska law. *See Rose v. Midland Nat'l Life Ins. Co.*, 954 F.3d 1117, 1119 (8th Cir. 2020) ("As a federal court sitting in diversity, we apply the substantive law of the forum state." (internal quotation marks omitted)). State statutes of limitations are substantive law. *See Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 866 (8th Cir. 2000) (applying Minnesota's statute of limitations as substantive law in a diversity case). Nebraska law provides that a breach-of-contract-for-sale action must be brought within four years after the cause of action has accrued, i.e., when the breach occurred. *See* Neb. Rev. Stat. U.C.C. § 2-725(1)–(2).

Defendants argue that, because each purchase order shipped before February 26, 2016, and payment was due thirty days afterwards,[2] the breach-of-contract cause of action accrued no later than March 27, 2016. Filing 60 at 12-13. Sheng did not file suit until March 30, 2020, which is over four years after the cause of action accrued. Filing 1. Thus, Defendants argue, the four-year statute of limitations bars Sheng's breach-of-contract claim. Filing 60 at 13. The Court agrees with Defendants that if the statute of limitations ran without being tolled from March 27, 2016, to March 27, 2020, Sheng's claim is untimely. However, Sheng argues that, pursuant to Nebraska Revised Statute § 25-216, the four-year statute of limitations ran anew because Defendants acknowledged its debt to Sheng. Filing 78 at 10-13. In support of this argument, Sheng filed with the Court an email chain where an unknown individual, "V," made a settlement offer to Sheng from the email account "vendors@princeglobalsports.com." Filing 78-6 at 2. Attached to one of the emails sent by "V" is a proposed settlement agreement between Sheng and the licensees that states that the licensees owe Sheng money under the purchase orders. Filing 78-6 at 2-5; Filing 78-7 at 2-6.

---

[2] As mentioned above, purchase order 101056 appears to require payment within ninety days, not thirty. However, in its Complaint, Sheng alleges that all purchase orders required payment within thirty days. Filing 10 at 5.

Nebraska Revised Statute § 25-216 tolls the statute of limitations for bringing a breach-of-contract-for-sale claim if the breaching party acknowledges the "existing liability, debt or claim" or makes "any promise to pay the same . . . in writing." Neb. Rev. Stat. § 25-216. In deciding what is sufficient to constitute "acknowledgment" under the statute, the Nebraska Supreme Court has explained,

> An acknowledgment sufficient to warrant or support the inference of a promise to pay the debt and to toll or remove the bar of the statute of limitations must be clear, certain, direct, and unequivocal. Acts or declarations relied on as acknowledgments sufficient to remove the bar of the statute of limitations will be closely scrutinized. The words used must be construed according to their just and natural import, without putting on them any force or constraint, and mere vague and uncertain expressions or conversations will not suffice. The most profuse acknowledgment of gratitude or of other moral obligation will not do.

*Kotas v. Sorensen*, 345 N.W.2d 1, 3 (Neb. 1984) (quoting 54 C.J.S. *Limitations of Actions* § 311 (1948)). "A mere reference to the indebtedness, although consistent with its existing validity, and implying no disposition to question its binding obligation, or a suggestion of some action in reference to it, is not such an 'acknowledgment' as is contemplated by the statute." *Degmetich v. Beranek*, 199 N.W.2d 8, 10 (Neb. 1972) (quoting *France v. Ruby*, 140 N.W. 175, 176 (Neb. 1913)). To overcome the statute of limitations, "the debtor must unqualifiedly acknowledge an existing liability." *Id.* (quoting *France*, 140 N.W. at 176).

The proposed settlement agreement included a paragraph stating, "[T]he Payor [(the licensees)] owes certain amounts and has contractual obligations to [Sheng] for business activities conducted on and before March 31, 2016 (the 'Payor's Obligation') as a result of an agreement or agreements between the Parties (the 'Amount Owed')." Filing 78-6 at 3. The Court finds that this statement, contained in a proposed settlement agreement, is insufficient to constitute acknowledgment of Defendants' debt. A statement in a proposed settlement agreement, which requires both parties to agree before it becomes binding, cannot be considered "unequivocal." *See*

*Luethke v. Suhr*, 650 N.W.2d 220, 226 (Neb. 2002) ("[S]ettlements negotiated by lawyers without authority from their clients are generally not binding."); *see also Kotas*, 345 N.W.2d at 3 (stating that "a mere admission of legal liability" is insufficient to toll the statute of limitations). As a "mere reference" to a debt made in a proposed settlement agreement, Defendants' statement is insufficient to toll the statute of limitations. *See Degmetich*, 199 N.W.2d at 10 ("A mere reference to the indebtedness . . . is not such an 'acknowledgment' as is contemplated by the statute." (quoting *France*, 140 N.W. at 176)). Further, a statement in a proposed compromise is not an admission of the debt but rather an effort to resolve the matter. Parties frequently engage in exchanges of proposals with the full understanding that if the matter does not resolve, the parties reserve the right to fully litigate the case while giving up nothing.

The Court finds the analysis in *United States v. Lorince* compelling. In *Lorince*, the district court for the Northern District of Illinois found that financial statements that listed the balance of a note as debt owed to the Small Business Administration ("SBA") did not constitute acknowledgement of a debt because they were submitted in service of negotiating a settlement with the SBA. *United States v. Lorince*, 773 F. Supp. 1082, 1096-98 (N.D. Ill. 1991). To consider documents exchanged during settlement negotiations to be an unequivocal acknowledgment of a debt "is to take [those] actions out of context and to ignore the realities of settlement negotiations, in which it is common for a party to acknowledge the merits of his opponent's case in an effort to hammer out an amicable resolution of the controversy." *Id.* at 1098. Likewise, in this case, the statement by Defendants must be read in context with the realities of settlement negotiations. A contrary finding "would imbue settlement negotiations with the types of binding consequences that courts traditionally have been reluctant to recognize." *Id.* at 1100. Indeed, the purpose of Federal Rule of Evidence 408, which prohibits using as evidence statements made during

8

settlement negotiations to prove liability, would be frustrated if courts used such statements to toll statutes of limitations. *See Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 965 (8th Cir. 2011) ("Rule 408 promotes 'the public policy favoring the compromise and settlement of disputes.'" (quoting Fed. R. Evid. 408 advisory committee's note to 1972 proposed rule)). Accordingly, the Court finds that the proposed settlement agreement does not toll the statute of limitations. Therefore, the four-year statute of limitations bars Sheng's breach-of-contract claim in Count I.

2.  *Waiving Right to Receive Payment Did Not Cause Breach to Accrue After March 27, 2016*

Sheng also argues that the statute of limitations does not bar enforcing the purchase orders because "there is a genuine issue of material fact whether Sheng waived its right to receive payment within 30 days of the merchandise's shipment . . . and thus whether Sheng's claims accrued 30 days following shipment–or sometime thereafter." Filing 78 at 14. In support, Sheng states that, in the past, it accepted late payment from the licensees. Filing 78 at 15. Therefore, Sheng asserts, the breach-of-contract claim did not accrue until "a 'reasonable' time" after payment was due. Filing 78 at 15. The Court disagrees. Sheng has not cited any Nebraska caselaw for the proposition that waiving the time for payment for prior unrelated contracts pushes the statute of limitations period forward for other contracts that are the subject of a lawsuit. Instead, the Nebraska Supreme Court is explicit that "[a] cause of action in contract accrues at the time of the breach or failure to do the thing agreed to." *Snyder v. Case*, 611 N.W.2d 409, 415 (Neb. 2000). Thus, when Sheng did not receive payment thirty days after shipment, the licensees had breached the purchase-order contracts. It was at that time the licensees "fail[ed] to do the thing agreed to." *Id.* The Court concludes that Sheng has produced no genuine dispute of material fact that would preclude summary judgment as to its breach-of-contract claim.

### 3.   Summary Judgment is Warranted for Purchase Order 101056

Whether the statute of limitations bars enforcement of purchase order 101056 requires further analysis. In its Amended Complaint Sheng alleged, "Under the terms set forth in the purchase orders, payment from the Prince Licensees to Sheng International was due within 30 days of shipment of the merchandise." Filing 10 at 5. However, one of the purchase orders filed with the summary-judgment motion, purchase order 101056, seems to require payment to be made in ninety days, not thirty. Filing 63-1 at 34. Sheng argues that because purchase order 101056 requires payment to made in ninety days, its suit for failing to pay for that purchase order falls within the statute of limitations. Filing 78 at 14. In response, Defendants argue that Sheng is bound by the statement it made in its complaint. Filing 82 at 15-17.

Statements made in pleadings constitute admissions. *Rendleman v. Steel City Marine Transp., Inc.*, 78 F.3d 589 (8th Cir. 1996) (citing *Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990)). These statements "are generally binding on that party unless the pleading is amended." *Brice*, 919 F.2d at 1314. "[A]lthough the rule smacks of legalism, judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001) (quoting *Soo Line R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)).

In *Brice*, the Eighth Circuit cited with approval the Fifth Circuit's reasoning in *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105 (5th Cir. 1987). *See Brice*, 919 F.2d at 1315 ("We find the *Davis* court's reasoning to be highly persuasive, and accordingly hold that [the defendant's] admissions were binding." (internal footnotes omitted)). In *Davis*, the plaintiffs sued the defendants for securities fraud. *Davis*, 823 F.2d at 107. The statute of limitations for filing such

10

claims was two years and began when "'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' of the violation." *Id.* at 107 (quoting *Vigman v. Cmty. Nat. Bank & Tr. Co.*, 635 F.2d 455, 459 (5th Cir. 1981)). In their complaint, the plaintiffs alleged that they became aware of the defendants' unlawful activity in August 1983. *Id.* After the defendants moved for summary judgment, arguing that the plaintiffs' claim fell outside the statute of limitations period, the plaintiffs filed an affidavit stating they did not suspect any wrongdoing until January 1984 and thus their claims were timely. *Id.* Nevertheless, the district court granted the defendants' summary-judgment motion. *Id.* The Fifth Circuit affirmed, holding that "[i]rrespective of which document contains the more accurate account, the [plaintiffs] are bound by the admissions in their pleadings, and thus no factual issue can be evoked by comparing their pleadings with [the plaintiffs'] affidavit." *Id.* at 108. The Eighth Circuit in *Brice* similarly held that the defendant's admissions in his answer bound him even after he produced contrary evidence. *Brice*, 919 F.2d at 1315.

Like the plaintiffs in *Davis*, Sheng made allegations in its complaint that seem contrary to the evidence ultimately produced. Specifically, Sheng alleged that the purchase orders all required payment within thirty days whereas purchase order 101056 reflects a ninety-day payment window. Although the admission is seemingly contradicted by purchase order 101056, Sheng's pleadings bind it. Therefore, despite the apparent conflict between the Amended Complaint and purchase order 101056, Defendants are entitled to summary judgment on Count I of Sheng's Amended Complaint.

However, the Court notes that pending before it is Sheng's Motion for Leave to File a Second Amended Complaint and to Amend Case Progression Order. *See* Filing 70. As explained below, the Court intends to grant that motion to allow Sheng to add the additional parties it seeks

to include because it has shown good cause to do so. Likewise, it is possible Sheng may have good cause to amend the progression order to allow it to amend its complaint to say payment was due within ninety days as to purchase order 101056. Indeed, Defendants concede in their Reply Brief that the Court "may allow [Sheng] to present such evidence." Filing 82 at 17. Therefore, the Court grants Sheng seven days' leave to supplement its Motion for Leave to File a Second Amended Complaint and to Amend Case Progression Order to request leave to amend its complaint to say payment was due on purchase order 101056 in ninety days. Sheng will need to show good cause to amend the progression order and that such amendment is warranted under Federal Rule of Civil Procedure 15. After Sheng has supplemented his motion, Defendants will have seven days to respond. *See Smith v. Insley's Inc.*, 499 F.3d 875, 879 (8th Cir. 2007) ("District courts have broad discretion to set filing deadlines and enforce (or not enforce) local rules.").

### 4. *Summary Judgment on Piercing the Corporate Veil*

Defendants also seek summary judgment on Count IV of Sheng's Amended Complaint. Filing 59 at 1. In Count IV, Sheng alleges that it is "entitled to judgment that all Defendants are jointly and severally liable for all recovery herein" under a "piercing the corporate veil" theory. Filing 10 at 11. Defendants argue that "[t]o the extent any claims against [the licensees] pursuant to the Purchase Orders are barred by the applicable statute of limitations, any claims against the remaining defendants are also time-barred." Filing 60 at 15. The Court agrees that, solely for the breach-of-contract claim in Count I, Defendants are not jointly and severally liable under a piercing the corporate veil theory.

"State law is viewed to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). Under Nebraska law, "in equity, the corporate entity may be disregarded and held to be the mere alter ego of a shareholder or

12

shareholders in various circumstances where necessary to prevent fraud or other injustice." *Medlock v. Medlock*, 642 N.W.2d 113, 124 (Neb. 2002).

Although included as a claim in Sheng's complaint, "piercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not as an independent cause of action." *Tamko Roofing Prod., Inc. v. Smith Eng'g Co.*, 450 F.3d 822, 826 (8th Cir. 2006). Here, Defendants seek summary judgment on Count IV to the extent Sheng's claims under the purchase orders are time-barred by the statute of limitations. Filing 60 at 15. Because Defendants have argued that only Count I is time-barred, the substantive right at issue is Sheng's breach of contract claim in Count I.[3] Any time-barred breach of contract claim pursuant to the purchase orders cannot be used to support joint and several liability under a piercing the corporate veil theory. Therefore, as to any time-barred purchase orders under Count I, such claims cannot proceed on a piercing the corporate veil theory. Defendants are thus entitled to summary judgment as to the purchase orders this Court has found time-barred under Count I.[4] *See Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Able Truck Rental Corp.*, 822 F. Supp. 1091, 1095 (D.N.J. 1993) ("An action to pierce the corporate veil is timely if the underlying action against the corporation was timely and the subsequent action to pierce the corporate veil to enforce the judgment was brought within the limitations period for enforcement of judgments.").

---

[3] Defendants do not move for summary judgment on a piercing-the-corporate-veil theory of liability as to Counts II and III because those claims were not part of its summary-judgment motion based on the statute of limitations, Filing 60 at 13-14, and therefore the Court expresses no opinion on the validity of that theory as to those counts.

[4] If Sheng is able to show good cause to allow it to amend its complaint to allege that purchase order 101056's payment period was ninety days, however, Sheng would be able to pursue joint and several liability as to that purchase order under a piercing-the-corporate-veil theory.

**C.  Motion for Partial Summary Judgment as to the Prince EMEA Purchase Orders**

Defendants filed another motion for partial summary judgment seeking to dismiss "any claims" based on purchase orders issued by Prince EMEA, who is not a party to this case. Filing 61 at 1. The purchase orders to Prince EMEA underlie Sheng's breach-of-contract claim in Count I. Filing 10 at 9. Because the Court has already concluded that Count I is barred by the statute of limitations, Defendants' motion is denied as moot. Additionally, because the Court denies this motion as moot, the Court denies as moot Sheng's Motion to Stay Defendants' motion.[5] Filing 79. However, if the Court had concluded that Count I was not time-barred, it would have granted Defendants' motion. Sheng has not presented any evidence that Defendants are liable for contracts made between it and nonparty Prince EMEA. *See Alder v. First Nat. Bank & Tr. Co. of Kearney*, No. A-90-332, 1992 WL 132257, at *3 (Neb. Ct. App. May 26, 1992), *aff'd*, 491 N.W.2d 686 (1992) (dismissing a defendant who was not a party to the contract).

**D.  Sheng's Motion for Leave to File a Second Amended Complaint and to Amend Case Progression Order**

Sheng has moved for leave to file a second amended complaint. Filing 70. According to Sheng, the second amended complaint will add C3 Holding Company, LLC, and Bradford Family Holdings, LLC, as defendants, add factual allegations related to those two defendants, and add factual allegations related to Sheng's piercing the corporate veil theory. Filing 70 at 3-4. Defendants oppose Sheng's motion, arguing that amending the amended complaint is futile. Filing 77 at 3-4. The Court finds that Sheng has shown good cause to amend the Court's progression order and that amending the amended complaint would not be futile.

---

[5] Sheng's Motion to Stay is based on its attempt to obtain evidence that Defendants are liable for Prince EMEA's purchase orders as Prince EMEA's alter egos. Filing 80 at 1.

*1. Standard of Review*

There are two procedural rules at play, and the parties disagree about their applicability to Defendants' motion seeking to amend its answer. First, Federal Rule of Civil Procedure Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a) further states that "[t]he court should freely grant [such] leave when justice so requires." *Id.* This standard is construed liberally but "plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)). A district court may appropriately deny the movant leave to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks and citations omitted). When a defendant alleges that amendment is futile, the Court considers if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Accordingly, this Court asks "whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard outlined above." *Id.* at 850-51.

Second, Federal Rule of Civil Procedure Rule 16(b) guides the district court on how to issue and modify pretrial scheduling orders and provides that "[e]xcept in categories of actions exempted by local rule, the . . . judge . . . must issue a scheduling order." Fed. R. Civ. P. 16(b)(1). The order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The scheduling order "may be modified only for good

cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). Additionally, Rule 16(d) states that a pretrial scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).

"The interplay between Rule 15(a) and 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). When a motion for leave to amend is filed outside the district court's scheduling order, the moving "party must show cause to modify the schedule." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (emphasis added). Showing "good cause" is more demanding than the standard in Rule 15. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (stating that "[a]s regards case management orders, ... the Federal Rules set a less forgiving standard" than the liberal construction given to requests to amend as a matter of course). As another court within the circuit aptly put it, "Rule 16 opens the door to Rule 15" with respect to motions to amend brought outside the scheduling order deadline. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Min. 2019). That is, Rule 16(b)'s "good cause" analysis is meant to determine whether the scheduling order should be modified; the Rule 15(a) analysis then "resolves whether the complaint can be amended." *Id.* (emphasis in original). Only after the movant has shown good cause to modify the scheduling order under Rule 16(b) may the court consider whether the amendment is permitted under Rule 15(a). *See Sherman*, 532 F.3d at 716 (citing with approval cases which first required a good-cause showing before proceeding to consider whether an amendment is proper under Rule 15(a)). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Id.* at 716-17 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)).

Here, the Court issued its scheduling order on December 10, 2020 which set a deadline for amendment of the pleadings of January 25, 2021. Filing 44 at 1. Sheng filed its motion seeking

leave to amend the complaint on June 15, 2021. Filing 70. Thus, Sheng must show both good cause for the late amendment under Rule 16 and that such amendment would not be futile under Rule 15.

*2. Sheng Shows Good Cause to Amend Case Progression Order*

Sheng requests that the Court amend its progression order so that Sheng may file a second amended complaint. Sheng requests leave to add two new defendants, Bradford Family Holdings and C3 Holding Company, and factual allegations related to its piercing the corporate veil theory. Filing 70 at 3-4. In support, Sheng argues that it did not learn of the existence of Bradford Family Holdings and C3 Holding Company until after Defendants served their supplemental responses to Sheng's interrogatories and spoke with Defendants' counsel on April 8, 2021. Filing 83-1 at 4. Sheng then learned that C3 Holding Company was a corporate parent of C3 Brands. Filing 83-1 at 4. Later, on April 26, 2021, Defendants produced the operating agreement for C3 Holding Company, which showed that Bradford Family Holdings was one of its corporate parents. Filing 83-1. According to Sheng, other documents produced by Defendants showed that Bradford Family Holdings capitalized C3 Holding Company with around $4,700,000. Filing 83-1. Thus, Sheng alleges, this information linked Bradford's old businesses—Prince and Ektelon—to his new businesses "and further revealed that money had flowed into C3 Holding Company around the time the [licensees] were being wound down, in late 2016." Filing 83-1. Sheng claims that Defendants attempted to hide this information. Filing 83-1. Defendants have not argued that Sheng lacks good cause to amend the case progression order.

The Court concludes that Sheng has shown good cause to amend the scheduling order. "Newly discovered facts" can provide a basis for good cause to amend. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012). Defendants have not argued that Sheng "could . . .

17

have been previously aware of the information." *John Ernst Lucken Revocable Tr. v. Heritage Bankshares Grp., Inc.*, No. 16-CV-4005-MWB, 2017 WL 776114, at *3 (N.D. Iowa Feb. 28, 2017). Rather, given the factual complexity of this case and the ever-increasing corporate entities purportedly created by Bradford, the Court is unsurprised that Sheng did not learn of the existence of C3 Holding Company and Bradford Family Holdings sooner.

Moreover, Sheng diligently sought leave to amend on June 15, 2021, less than two months after it alleges it became aware of this information on April 26, 2021. *See Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, No. 18CV02863DWFECW, 2020 WL 5229677, at *6 (D. Minn. Sept. 2, 2020) (finding due diligence when "less than two months passed from when [the plaintiffs] learned of the facts underlying their new allegations and when they filed the [motion to amend] . . . ."). This contrasts with other situations when courts have found a lack of good cause. *See Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 887 (8th Cir. 2006) (upholding the district court's denial of a motion to amend when the plaintiff "knew about [an alleged failure to prescribe him physical therapy] as early as May 2003 but did not file a motion to amend until almost six months later."); *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1066 (8th Cir. 2005) (affirming the denial of a motion to amend to add new defendants when the plaintiff "had been aware of the existence of the companies in 1999 before it first initiated the suit . . . ."). Furthermore, Defendants do not argue that they will be prejudiced by amending the scheduling order. *See* Advance Tr. & Life Escrow Servs, No. 18CV02863DWFECW, 2020 WL 5229677, at *6 (D. Minn. Sept. 2, 2020) (finding no prejudice where nonmovant did not argue it was prejudiced by amending the scheduling order). The Court finds no prejudice here, where Sheng seeks only to add factual allegations and parties that supplement its theory for piercing the corporate veil. Accordingly, the Court finds good cause to amend the progression order.

### 3. *Amendment is Not Futile*

Defendants argue that leave to amend should not be granted since amendment is futile. Filing 77 at 3-4. As to Sheng's breach of contract action in Count I, this Court has already concluded that the statute of limitations bars enforcing the purchase orders with thirty-day payment windows. Therefore, Defendants are correct that amending the complaint to include the new defendants for these purchase orders in Count I would be futile.

However, Sheng also seeks to hold the new defendants jointly and severally liable under a theory of piercing the corporate veil. Filing 71-2 at 14 (showing that Sheng proposes to add the new defendants under its "Piercing the Corporate Veil" claim). Moreover, Counts II and III, in which Sheng seeks to hold the current defendants liable under the IPA and TSA contracts and for unjust enrichment, have not been dismissed. The question is, therefore, whether Sheng has sufficiently pleaded that the new defendants are jointly and severally liable with the current defendants under Counts II and III pursuant to a piercing-the-corporate-veil theory. The Court concludes Sheng has done so.

"Generally, a corporation is viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation." *Christian v. Smith*, 759 N.W.2d 447, 462 (Neb. 2008). However, "the notion of separate corporate existence of parent and subsidiary or affiliated corporations will not be recognized where one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation." *Hayes v. Sanitary & Imp. Dist. No. 194 of Douglas Cnty.*, 244 N.W.2d 505, 511–12 (Neb. 1976). The separate corporate identity will be disregarded "to prevent fraud or injustice to the plaintiff." *Christian*, 759 N.W.2d at 462; *see also Hayes*, 244 N.W.2d at 512 ("The fiction of separate

corporate identity of two corporations will not be extended to permit one of the corporations to evade its just obligations or to promote fraud or illegality or injustice." (citing 18 Am. Jur. 2d Corporations § 17)). Relevant factors include:

> (1) grossly inadequate capitalization, (2) insolvency of the debtor corporation at the time the debt is incurred, (3) diversion by the shareholder or shareholders of corporate funds or assets to their own or other improper uses, and (4) the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity.

Christian, 759 N.W.2d at 462.

The Court concludes that Sheng's allegations are sufficient to support a piercing-the-corporate-veil theory. Sheng's proposed second amended complaint alleges that Bradford "completely controls and operates [Bradford Family Holdings, C3 Holding Company, C3 Brands, Waitt Brands and the licensees] with such unity of interest that they have ceased to exist as entities separate and distinct from Bradford." Filing 71-1 at 11. Moreover, Sheng's proposed complaint states that "Bradford is the manager and/or CEO of each of these entities, Bradford signed both the IPA and TSA on behalf of the [licensees] and Waitt Brands, [and that the licensees] were grossly undercapitalized at their inception." Filing 71-1 at 11. Sheng has also alleged that, at the time the licensees issued purchase orders to it, the licensees were insolvent because Bradford funneled money from the licensees to himself and Bradford Family Holdings. Filing 71-1 at 12. In summary, Sheng has alleged that the licensees were insolvent at the time they became indebted to Sheng, that Bradford intermingled the funds between all these corporate entities, including the two new defendants, and that Bradford has treated the entities as "a mere façade" of his personal dealings and the dealings of all the other corporations. These allegations are sufficient to support a piercing the corporate veil theory, and thus the new defendants could be jointly and severally

20

liable with the current defendants on Counts II and III. Accordingly, amendment would not be futile.

The Court therefore intends to grant Sheng leave to amend its second amended complaint to add the additional defendants. However, as set forth above, the Court is first providing Sheng leave to supplement its request to amend the complaint to include an allegation about the ninety-day payment window for purchase order 101056. In so doing, Sheng must satisfy the Rule 15 and Rule 16 standards set forth herein. Thus, the Court will rule on the Motion for Leave to File a Second Amended Complaint and to Amend Case Progression Order once Sheng has supplemented it and Defendants have been given the opportunity to respond.

## IV. CONCLUSION

The Court concludes that Sheng's breach-of-contract claim in Count I is barred by the statute of limitations as to the purchase orders with a thirty-day payment window. Additionally, the Court intends to grant Sheng leave to amend its Second Amended Complaint to add the two new defendants and factual allegations related to the new defendants and its piercing the corporate veil theory. Sheng is granted leave to supplement its Motion for Leave to File a Second Amended Complaint and to Amend Case Progression Order. Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Partial Summary Judgment as to Counts I and IV, Filing 59, is granted;

2. Defendants' Motion for Partial Summary Judgment as to the Prince EMEA Purchase Orders, Filing 61, is denied as moot;

3. Sheng's Motion to Stay Defendants' Motion for Partial Summary Judgment as to the Prince EMEA Purchase Orders, Filing 79, is denied as moot;

4.  Sheng is granted leave to supplement its Motion to Amend its Amended Complaint and Amend Case Progression Order, Filing 70, within seven days from the date of this order to include a request to amend its complaint to state payment was due within ninety days on purchase order 101056; and

5.  Defendants are granted seven days from the date of Sheng's supplemented motion in which to respond.

Dated this 22nd day of October, 2021.


BY THE COURT:


_____
Brian C. Buescher
United States District Judge